# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELIZABETH COLTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Case No. 09-1772 (RJL) |
| | ) |
| HILLARY RODHAM CLINTON, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION
(September **24** 2010) [#13, #19]

Plaintiff, Elizabeth Colton ("Colton"), brings this action against Hillary Rodham Clinton in her official capacity of Secretary of State (the "defendant" or the "State Department"), alleging age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621 *et seq.*, as well as an equal protection challenge under the Fifth and Fourteenth Amendments of the U.S. Constitution. Before the Court are defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment and plaintiff's Rule 56(f) Motion for Discovery. For the following reasons, the defendant's Motion to Dismiss is GRANTED, and plaintiff's Rule 56(f) Motion for Discovery is DENIED AS MOOT.

## BACKGROUND

Plaintiff is a 65-year-old member of the Foreign Service. 1st Am. Compl. ("Compl.") ¶ 11. The Foreign Service is the diplomatic corps of the U.S. government under the control of the State Department, whose employees represent the United States

abroad and assist U.S. citizens overseas. *See id.* ¶ 2. Congress has provided certain

personnel policies for the Foreign Service separate from the general Civil Service,

including a mandatory retirement age. *See id.* ¶¶ 5, 13. Under the Foreign Service Act of

1980, all Foreign Service officers "shall be retired from the Service" at the end of the

month in which they reach age 65. 22 U.S.C. § 4052(a)(1); *see* Compl. ¶ 5. That

provision of the Foreign Service Act also confers discretion on the Secretary of State to

make exceptions to the requirement in particular instances, if it is in the "public interest"

to do so. 22 U.S.C. § 4052(b)(2); *see* Compl. ¶ 21.

Colton joined the Foreign Service in 2000, when she was 54 years old. Compl.

¶¶ 28, 31. At that time, the State Department informed her that her mandatory retirement

date was August 31, 2010.[1] *Id.* ¶¶ 34, 56. According to a State Department standard

operating procedure quoted in plaintiff's First Amended Complaint, employees facing

mandatory retirement may be assigned to serve overseas if those employees "can be

expected to complete at least 24 months of such an assignment" unless the post carries a

one-year tour of duty or has been designated "Historically Difficult to Staff." *Id.* ¶ 57

(quoting Foreign Service Standard Operating Procedure D-01 ("SOP D-01")). On or

about October 17, 2008, and despite knowing about this procedure and the mandatory

retirement age, Colton submitted a bid for a two-year assignment with the U.S. Embassy

in Algiers that began in May or June 2009. *Id.* ¶¶ 50-52. As a result, the Algiers post

---

[1]     Colton turned 65 in August 2010 and, according to the terms of the Foreign Service Act,
would have had to retire on August 31, 2010. *See* Compl. ¶ 56; 22 U.S.C. § 4052(a)(1). On
August 3, 2010, defendant granted plaintiff a one-year extension of service, allowing her to serve
as Information Officer at the U.S Embassy in Cairo, Egypt. *See* Notice, Aug. 6, 2010 [#36].

would have required her to serve until May or June 2011, several months past her mandatory retirement date of August 31, 2010. *Id.* ¶ 51. On November 3, 2008, plaintiff nevertheless accepted a "handshake offer" for the Algiers assignment, apparently without disclosing her mandatory retirement date. *Id.* ¶¶ 54-55.

After officials within the State Department realized that Colton might not be available to serve the full two years in the Algerian post because of the mandatory retirement age, they notified her that there may be a problem with the assignment. *Id.* ¶¶ 55-57. Plaintiff communicated her willingness to serve the full two-year tour of duty, "notwithstanding" the statutory requirement that she retire at age 65. *Id.* ¶ 57. On November 20, 2008, Colton was told that the handshake offer had been withdrawn because the Algiers position was inconsistent with the mandatory retirement provision and SOP D-01. *Id.* ¶¶ 58-61. Plaintiff then made a number of requests for an extension of service that would allow her to serve beyond age 65. *Id.* ¶¶ 66, 69, 75. At that time, the Secretary of State did not exercise her discretion to grant Colton such an extension. *See id.* ¶¶ 72-75. Eventually, plaintiff instead obtained a one-year assignment at the U.S. Consulate in Karachi, Pakistan, beginning in July 2009. *Id.* ¶ 82.

On January 15, 2009, plaintiff filed a Notice of Intent to Sue with the EEOC, alleging that the State Department's enforcement of the mandatory retirement age amounted to age discrimination in violation of the ADEA. *Id.* ¶ 68. She amended her notice on April 3, 2009. *Id.* ¶ 71. Colton filed the instant action on September 18, 2009, asserting age discrimination (Count I) and retaliation (Count III) in violation of the ADEA and an equal protection challenge to the mandatory retirement provision under the

U.S. Constitution (Count II). On October 22, 2009, plaintiff filed a First Amended

Complaint, alleging further that the State Department had denied her a promotion in

October 2009, and that it did so for discriminatory and retaliatory reasons. *Id.* ¶ 88.

Plaintiff seeks damages and injunctive relief.

## ANALYSIS

### I.    Standard of Review

Defendant moves to dismiss for "failure to state a claim upon which relief can be

granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a plaintiff's

"[f]actual allegations must be enough to raise a right to relief above the speculative level,

on the assumption that all the allegations in the complaint are true (even if doubtful in

fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see also*

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (stating that if a court has determined that

a plaintiff has asserted "well-pleaded factual allegations," the court "should assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief").

When a Court is resolving a motion to dismiss, "the complaint is construed liberally in

the plaintiff['s] favor," and the plaintiff is granted "the benefit of all inferences that can

be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276

(D.C. Cir. 1994)). At the same time, the Court need not accept the inferences drawn by a

plaintiff "if such inferences are unsupported by the facts set out in the complaint," nor

must it "accept legal conclusions cast in the form of factual allegations." *Id.* Defendant

here moves alternatively for summary judgment, which need not be considered when the

Court disposes of the case pursuant to a motion to dismiss.

## II. ADEA Claims

As an initial matter, the parties dispute whether plaintiff provided sufficient notice of her intent to sue with respect to: (1) her retaliation claim as a whole; and (2) her allegation that the State Department's failure to promote her in October 2009 was an additional act of discrimination and retaliation. The ADEA provides two avenues for federal employees to assert claims. *See* 29 U.S.C. § 633a. The first, which the plaintiff did not pursue, is through exhaustion of administrative remedies followed by civil suit, if the case is not resolved administratively. The second, which Colton does rely on, is accomplished by filing a notice of intent to sue with the EEOC within 180 days of the "alleged unlawful practice" and waiting thirty days before filing a civil action. 29 U.S.C. § 633a(d); *see also Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003) (citing the "express prerequisites" in 29 U.S.C. § 633a(d)).

Here, Colton failed to give notice of any intent to sue with respect to her retaliation claim. Plaintiff first filed a notice of intent to sue with the EEOC on January 15, 2009, and filed an amended notice on April 3, 2009. Compl. ¶¶ 68, 71. Neither notice discloses any intent to bring a retaliation claim, or indicates that Colton was subjected to any retaliatory behavior for engaging in protected activity, even though some of the alleged retaliation occurred *prior* to the notices being filed. *See, e.g.*, Compl. ¶ 79. Rather, the notices focused entirely on plaintiff's failure to obtain positions as a result of the mandatory retirement age, decisions which plaintiff characterized as "based solely on her age" and as "age discrimination." *See* Notice of Intent to Sue, Def.'s Ex. A, ¶¶ 4, 6,

9; Am. Notice of Intent to Sue, Def.'s Ex. A, ¶¶ 4, 6, 11.[2] Nor can Colton excuse the lack of notice by asserting that her retaliation claim grows out of, or is sufficiently related to, the allegations of discrimination in her April notice. *See Hernandez v. Gutierrez*, 656 F. Supp. 2d 101, 104-05 (D.D.C. 2009) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)). Accordingly, Colton has failed to comply with her statutory obligation to notify the EEOC within 180 days after the alleged unlawful practice—i.e., retaliation—occurred. As a result, her retaliation claim in Count III of the Complaint must be dismissed in its entirety.

Similarly, plaintiff has failed to file notice of intent to sue with respect to the allegedly discriminatory failure to promote, which plaintiff discovered on October 10, 2009. *See* Compl. ¶ 88. The failure to promote was included as an additional act of discrimination and retaliation in her First Amended Complaint filed on October 22, 2009. *See id.* As discussed above, the plain language of § 633a(d) requires plaintiff to have filed notice of her intent to sue within 180 days "after" the allegedly "unlawful practice" occurred. Since it was impossible for the January and April 2009 notices to include any allegations of the purported failure to promote in October 2009, Colton would have had to file another amended notice to comply with the statutory prerequisites to suit. *See Morgan*, 536 U.S. at 114 (finding failure to promote to be a "discrete act"). As she has failed to do so, to the extent that plaintiff's discrimination claim in Count I is based on

---

[2]     A court may consider documents incorporated into the complaint by reference and matters of which a court may take judicial notice without converting a motion to dismiss into one for summary judgment. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

the agency's decision not to promote her, it must also be dismissed. *See Rann*, 346 F.3d at 199; *Macellaro v. Goldman*, 643 F.2d 813, 816 (D.C. Cir. 1980).

As to the remainder of the allegations forming the basis of Colton's age discrimination claim, the parties disagree on what statute of limitations should apply in an ADEA case where, as here, a plaintiff chooses to bypass the administrative process and proceed directly in this Court following notice of intent to sue. Our Circuit has not specifically addressed this situation, and it is unnecessary for this Court to do so now. Regardless of which limitations period applies, Colton's ADEA claim of age discrimination fails as a matter of law and must be dismissed for that reason. How so?

In Count I, plaintiff claims that the State Department discriminated against her on the basis of age by: (1) denying her the two-year position in Algiers; (2) failing to assign her to a position "equivalent" to the Algiers position; (3) denying her requests for an extension of service under 22 U.S.C. § 4052(b)(2); and (4) failing to promote her in October 2009. *See* Compl. ¶ 91. With the exception of the failure to promote allegation, which is not properly before this Court as explained above, plaintiff is, in effect, asserting that the State Department discriminated against her by complying with and enforcing the statutorily mandated age of 65. This claim must fail as a matter of law, however, because our Circuit has already held that the mandatory retirement provision Colton is challenging here is a valid exception to the ADEA. *See Strawberry v. Albright*, 111 F.3d 943, 947 (D.C. Cir. 1997).

In *Strawberry*, the plaintiff attempted to avoid the mandatory retirement provision of the Foreign Service Act, in part by requesting a waiver from the Secretary of State of

the mandatory retirement age under § 4052(b). That request was denied, and the *Strawberry* plaintiff sued the Secretary of State for age discrimination under the ADEA. *Id.* at 945. The district court rejected his claim, finding that the "mandatory retirement of Foreign Service employees[] must be given full force and effect" and that "[t]he ADEA's general prohibition of age discrimination cannot be read to prevent the implementation of the mandatory retirement provisions of the Foreign Service Act." *Id.* (quoting the district court's memorandum opinion). In a summary affirmance, our Circuit agreed. *Id.* at 947. The Circuit Court found that Congress's reenactment of the mandatory retirement age in the Foreign Service Act of 1980—which raised the mandatory retirement age from 60 to 65—after the ADEA was made applicable to federal employees reflected Congressional judgment that "the ADEA's general provision on age discrimination does not prohibit enforcement of the mandatory retirement provisions." *Id.*; *see also Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 68-69 (2000) ("Under the current ADEA, mandatory age limits for law enforcement officers and firefighters—at federal, state, and local levels—are exempted from the statute's coverage"); *Stewart v. Smith*, 673 F.2d 485, 492 (D.C. Cir. 1982) (finding maximum age rule for federal law enforcement officers to be an exception to the ADEA).

In light of this controlling authority, plaintiff's challenge to the enforcement of the mandatory retirement provision must be dismissed. Her allegations of discrimination based upon the failure to assign her to the Algiers position simply reflect her disagreement with the defendant's implementation and enforcement of the mandatory retirement provision. Plaintiff admits that the Algiers position or, for that matter, any

other two-year tour of duty beginning in May or June 2009 would have required her to serve nine or ten months past her mandatory retirement age. *See* Compl. ¶ 51. Colton also admits that she did not view any of the available one-year assignments as "equivalent." *See id.* ¶¶ 64, 72. Thus, plaintiff's ineligibility for the Algiers assignment or any other assignment she thought "equivalent" resulted from enforcement of the mandatory retirement provision of the Foreign Service Act and, therefore, is not actionable under the ADEA. *See Strawberry*, 111 F.3d at 947.

Colton's attempts to distinguish *Strawberry* are, to say the least, unpersuasive. Plaintiff argues that she "is not challenging that being forced to retire at age 65 years old constitutes *per se* age discrimination under the ADEA . . . Rather, plaintiff asserts that Defendant's denial of the Algiers position simply because of her age constitutes actionable age discrimination under the ADEA." Pl.'s Opp'n at 24. What Colton fails to acknowledge is that she was denied the Algiers position *because of the mandatory retirement provision*, which our Circuit has already held to be an exception to the ADEA. She further attempts to distinguish *Strawberry* by arguing that, unlike that plaintiff, who challenged his mandatory retirement *after* being forced to retire, she is complaining of alleged acts *before* she turned 65. As the defendant points out, this argument, if accepted, would subject the defendant to suit for all actions taken prior to the actual date that an employee must retire under the Foreign Service Act, even when the challenged acts are taken to implement or enforce the requirements of the mandatory retirement provision. Such a result is, of course, nonsensical. Simply put, it is irrelevant whether the challenged acts occurred before or after plaintiff's mandatory retirement, and it is of no

moment when the suit is brought. The only pertinent question is whether a challenged act was undertaken to implement or enforce the provision. If so, then the ADEA's general prohibition on age discrimination does not apply. *See Strawberry*, 111 F.3d at 947.

Similarly, Colton's allegation that the Secretary of State's refusal to grant her an extension pursuant to § 4052(d) was a discriminatory act is unavailing. Although the mandatory retirement provision grants the Secretary the discretion to retain a person for up to five years past the mandatory retirement age if in the "public interest," there is no requirement that the Secretary do so. *See* 22 U.S.C. § 4052(b)(2). In fact, the plaintiff in *Strawberry* was also denied such an extension, and our Circuit Court nonetheless rejected his claim of age discrimination. *Strawberry*, 111 F.3d at 945. Indeed, such a result makes good sense. If a plaintiff could successfully claim age discrimination based on the defendant's refusal to grant a discretionary waiver to the mandatory retirement age, the mandatory retirement provision would be rendered, in essence, unenforceable. Nor was it required of the State Department, as asserted for the first time in plaintiff's Opposition, to create a new assignment just to accommodate Colton's impending mandatory retirement. *See* Pl.'s Opp'n 26. In the end, plaintiff's allegations amount to nothing more than a blatant attempt to circumvent the mandatory retirement provision, enforcement of which is not actionable under the ADEA. Accordingly, the remainder of Count I must be dismissed.

## III. Equal Protection Claim

Plaintiff's equal protection challenge to the mandatory retirement age fairs no

better than her ADEA claims.[3] In *Vance v. Bradley*, 440 U.S. 93 (1979), the Supreme

Court held that the mandatory retirement provision of the Foreign Service Act, which at

that time required retirement at age 60, was rationally related to a legitimate state interest:

"to recruit and train and to assure the professional competence, as well as the mental and

physical reliability, of the corps of public servants who hold positions critical to our

foreign relations, who more often than not serve overseas, frequently under difficult and

demanding conditions, and who must be ready for such assignments at any time." *Id.* at

97.[4] As such, the Supreme Court accepted the Secretary of State's rationale for how the

mandatory retirement provision was "an integral part of the personnel policies of the

Service designed to create predictable promotion opportunities and thus spur morale and

stimulate superior performance in the ranks" and to "remov[e] from the Service those

who are sufficiently old that they may be less equipped or less ready than younger

persons to face the rigors of overseas duty in the Foreign Service." *Id.* at 98.

Furthermore, *Bradley* is consistent with decades of equal protection jurisprudence

rejecting similar age-related challenges, and it squarely forecloses plaintiff's challenge

here. *See Kimel*, 528 U.S. at 84 (stating that the government "may rely on age as a proxy

for other qualities, abilities, or characteristics that are relevant to the State's legitimate

interests" and "[t]hat age proves to be an inaccurate proxy in any individual case is

---

[3]    Although the Fifth Amendment does not contain an equal protection clause, the Supreme
Court has held that the due process clause of the Fifth Amendment contains an equal protection
component applying to the federal government. *See Bolling v. Sharpe*, 347 U.S. 497, 499
(1954); *Brandon v. Dist. of Columbia Bd. of Parole*, 823 F.2d 644, 650 (D.C. Cir. 1987).
[4]    The parties do not dispute that rational basis review applies in this case. *See Bradley*, 440
U.S. at 109.

irrelevant"); *Gregory v. Ashcroft*, 501 U.S. 452, 471-72 (1991) (rejecting equal protection challenge to state law provision requiring state judges to retire at 70); *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 313-14 (1979) (finding mandatory retirement of police officers at age 50 to meet the requirements of the equal protection clause).

Colton's attempt to avoid *Bradley* by arguing that "conditions have changed" in the thirty years since that case was decided fails for several reasons. First, Congress, following the *Bradley* decision, has already taken into account the changed conditions plaintiff references, such as advancements in technology and medicine, and raised the mandatory retirement age from 60 in the Foreign Service Act of 1946 to 65 in the Foreign Service Act of 1980. Second, plaintiff's suggestion that the 1980 statute is outdated because it is thirty years old ignores the fact that the 1946 version upheld in *Bradley* was both more restrictive, in that it required retirement at 60 rather than 65, and itself thirty-four years old at the time of that decision. Finally, Colton is woefully misguided to imply that this Court can and should disregard Supreme Court precedent if it appears outdated. The Supreme Court alone can overrule its own precedents, and the fact that a plaintiff articulates a new theory as to why a different result should be reached is insufficient to revisit a settled issue. *See State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997). To that end, although the mandatory retirement provision has been amended since *Bradley*, the primary difference between the two versions is that the current version is *less* restrictive. Nothing about Congress's decision to raise the retirement age calls into question the holding in *Bradley* that having a mandatory retirement provision for Foreign Service

12

officers is rationally related to a legitimate state interest.[5]  Therefore, as Colton has failed

to state a claim upon which relief may be granted for her equal protection challenge,

Count II must also be dismissed.

## CONCLUSION

For the foregoing reasons, the defendant's Motion to Dismiss is GRANTED, and

plaintiff's Rule 56(f) Motion for Discovery is DENIED AS MOOT.  An Order consistent

with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[5]      Plaintiff's remaining arguments are insufficient to establish a viable equal protection challenge.  For example, *Bradley* forecloses Colton's argument that other employees performing similar functions, as well as temporary civil service appointments, are permitted to serve past 65.  *See Bradley*, 440 U.S. at 101-102 ("Congress plainly intended to create a relatively small, homogeneous, and particularly able corps of Foreign Service officers. It was thought that the tasks performed by this corps were sufficiently demanding and important to the Nation that it was necessary to pursue more rigorous policies to ensure excellence then those generally applicable in the Government.").  Similarly unavailing is plaintiff's argument that the provision, in conjunction with another earlier alleged policy, has had a "disparate impact" on her.  *See, e.g., Harris v. McRae*, 448 U.S. 297, 323 & n.26 (1980) (stating that the Equal Protection Clause only guards against "purposeful discrimination," and not disparate impact).  Finally, her argument that the defendant enforces the mandatory retirement provision in an unconstitutionally discriminatory manner does not even implicate rational basis review under the Equal Protection Clause.  *See, e.g., Engquist v. Oregon Dep't of Agric.*, 128 S. Ct. 2146, 2155 (2008).